Good morning, Your Honor. May it please the Court, my name is William Palmer and I represent the plaintiff's appellants in this action. I wish to reserve five minutes of time to respond to the defendant's appellee's arguments. At the outset, we make it very clear that the issue presented here is not a challenge to the facial constitutionality of the changes to California's unclaimed property law, which these citizens force the state officials to undertake through their preliminary injunction in this case. The Ninth Circuit has held the new notice provisions to be facially constitutional in three decisions, Taylor III, the Turner-Cliff decision, and the Siever III decisions, all of which were published. What these citizens are challenging is the California Comptroller's interpretation and application of the plain language in the new law, SB 86. In this context, the second amended complaint, which had to be amended out of necessity after the changes to the new law with new plaintiffs, properly sets forth the facts and theories of recovery and should not have been dismissed. This is because, as applied, the California Comptroller admittedly does not follow the express language of the new law and has apparently not heard the rulings of this Court in the earlier published decisions in this Taylor case and the Siever case. The Comptroller will explain to this panel that by mailing letters to knowing the new law to the California Comptroller, the California Comptroller will be able to explain why the California Comptroller is not doing it. Prius-Sheet. Prius-Sheet, two things in particular, Your Honor. Number one, they should publish proper Millane-style notice. They're using the same generic advertisements that do not put a property owner on notice. And I provided examples to the Court. The Court in three published decisions has said these generic advertisements that say you may have unclaimed property do not provide Millane-style notice to the owner. And in a sample I pulled from the State Archives, all the Controllers provided property description and name. Roberts. And what else? The second point, Your Honor, is the Comptroller will admit in a moment that they mail notices to knowingly stale addresses. These are the addresses provided by the companies. And the companies say. But is it in accordance with the statute? No, Your Honor. It's been passed muster by Taylor III. No, Your Honor. And let me explain why. In Jones v. Flowers, the Supreme Court of the United States said when the State actor knows that his notice will be ineffective, he must do more. And here the Comptroller will tell you, we have full access to databases right in our office. We've been given statutory authority under Section 1531.5 to search these databases. Pre or post a sheet? The 1531.5 is post a sheet, Your Honor. Jones. What does the Comptroller have to do pre a sheet? Pre a sheet. To meet your standard. It's not my respect. The standard you propose. Yes. I'm using the standard of Jones v. Flowers, which we were all ordered to review prior to Taylor II. And Jones makes it very clear. What is that? What does the State have to do? The State needs to check the databases of the State, like the DMV records, that are directly accessible in the Comptroller's office. Well, the reason I'm asking that question is because I can't tell from, assuming you're correct, that it's constitutionally infirmed. What it is you're asking the State to do, and sometimes you say it's required to search all records, sometimes you say all public records, you say electronic records, you say commercial records, all other State data agency databases. What is it, if you were going to draft, you know, a standard operating procedure, what is it you're saying that they need to do? They need to take steps that are, as in the words of the Supreme Court in Mullane and Jones, that are reasonable and practical to notify these owners. Sending a letter to a known stale address is not constitutional notice. Well, it seems to me Taylor III said otherwise. It said if you follow the procedures set forth in 1531, that you get the holder's address, check it against the franchise tax board address. If it's the same, that's the address you'll use. If it's different, you use the board's address. That was what was before this Court in Taylor III, and it seemed to pass muster. Prius G. Yes, Your Honor. The Court said that, and two other panels also said, that facially the statute is constitutional. The assumption is, though, as in Jones v. Flower, that the State official will take steps to, that one would take if he were actually desirous of conveying notice to the property owner. Now, if I know that someone's not going to receive the letter because it's a stale address, I'm not within the constitutional standard. When you say you know that it's a stale address, what do you mean? Because the companies, before they deliver the property to the State, have to do due diligence. They have to make sure that the address is stale, and it's under both the State statute and Federal regulations as applies to stock. So the State, so the companies are not allowed to hand over to the State property that is held by a known owner. They have to verify that the address is stale. So when they hand the property over with the address, it's already been certified as stale. So when the State then mails a letter to the same address, they know it's not going to ever be received by the owner. We have databases in the State. This is Prius G you're talking about. Yes, sir. Now, do they have the right under 1531.5 to access these other databases, Prius G? They have the right under Jones v. Flowers. That's not the question I asked you, though. Yeah, no, under 1531.5, they are explicitly given authority to access all these databases to return the property to the owners. Post a sheet. Yes, sir. Can they use 1531.5 Prius G? Am I using that Prius G? No, I said can they use it? Yes, Your Honor. It's bundled in with all the notice provisions. And remember, the purpose of these statutes, and it's set forth, you know, just a minute ago, Judge Huck, you asked me if I had authority. I refer you to 1531.5, 1531 sub F. This section is intended to inform owners about the possible existence of unclaimed property identified pursuant to this chapter. That's a blanket umbrella statement that as the controllers authorize, take whatever steps are necessary to notify these people that he's about to take their property. Let me make sure I understand how this works, Prius G. A bank or some other holder of property lets the State know that the account's been inactive for a period of time, right? Is that the way it starts? Yes, Your Honor. There's a dormant, there's a, it kind of reads a presumption of abandonment into the statute. There's a dormancy period. Okay. They then, the holder, the bank, whatever it is, sends out a letter. Is that right? The holder will send out a letter to, and if the letter comes back, return to sender, they know the person is no longer at that address. And then what do they do? Then they, if it's in the case of stock, they'll do some surface searches. Who's they? The company and their transfer agent under the Federal regulations. The holder of the property. Yes, sir. Or if it's a bank, it's the bank? The bank, the bank won't do anything more than send out the letter to the last known address. That comes back, last known address. They then at some point notify the controller. At that, at, after the dormancy period of so many years, depending on the type of property, the, the holder will then transfer a list of names and then the property to the controller. How does the Franchise Tax Board get involved in this? The Franchise Tax Board only gets involved if the citizen, if the holder provides a social security number. And what I've tried to, tried to point out to you. At what stage does that happen? At the time the property is delivered to the State of California, the holder, if they have, if they want to, they provide a social security number. And what I've tried to highlight. That's post a sheet? That's pre-sheet, Your Honor. The property's been transferred to the controller? Yes, sir. That's, that's still the pre-sheet phase? Yes. It's like, it's like fence posts in a line. As the, as the property moves through, there's different statutory obligations. So the holder delivers the property, social security number. This, it's then incumbent on the controller to notify the owner prior to taking the property that he's about to take this property, sell it, and use it for the, the benefit of the state. Okay. So if they get a social security number, the controller contacts the Franchise Tax Board and gets a new address or the most recent address? Yes. And if he gets multiple addresses, the controller will tell you that he mails it to one address. He doesn't mail it to multiple addresses. If that comes back undelivered, that's the end of the ballgame for the controller? The controller will mail a, mail a letter to the, the stale address, as I mentioned. So, so you have two options. If you get a, if you get a new address from Franchise Tax Board, that's a new possibility. Otherwise, they mail the letters to the stale address. And what they're doing wrong, in your view, is that when it comes back to the address that they had gotten from the Franchise Tax Board, they just give up. They don't do anything further. Right. Or if, even if the letters come back to them, for example, they, they will tell you they received 75,000 letters back. They do nothing more. They don't check, for example, they will tell you that they have the DMV database right on their desk. And they use that when they get a claim to make sure they have the right owner. It costs them nothing. Again, back to Jones. Let me, let's, Patrick, you have emphasized the DMV. Yes. Look up the license. How would that help Mr. Taylor? He is in England. I've always struggled with that, Your Honor. I do, too. He has other intel stock. He doesn't have a social security number. He would never get the publication notice. He would never get a direct mail notice. So his stock, his remaining stock, is as at risk today as it was when this case started. But he still has access to that stock today, doesn't he? I didn't hear that last time. He has access, unless it's been sold, he has access to the stock. If it's been sold, he has access to the proceeds of the sale of the stock. But it is never permanently, it's cheated to the State of California. So whenever he gets around to it, he can go redeem the stock or the proceeds. I don't know how Mr. Taylor protects himself against the operation of this law, because he has no nexus with the State of California. He doesn't live here. Intel, as Taylor 1 pointed out, is ---- My point is a little different than that. You're saying they should check the driver's license information. That wouldn't help any nonresident. No. It wouldn't help anybody who doesn't have a driver's license. So you would say they have to do something more than that for Mr. Taylor and others so situated. Yes, sir. Yes, sir. You rely basically on the Jones case. But the Jones case said it depends on the circumstances. What is reasonable depends on the circumstances. There is a sale, a permanent sale of a home, the most important asset that most of us have. And they sold to a third party, so it was gone. Unlike here, we have a situation where it's never gone in the sense that it's always redeemable. And in Jones, they said whichever the real estate assessor or property tax assessor did not have to look at the phone book, did not have to look at other government databases, which you're suggesting they have to do. So if you're relying on Jones, it seems to me you're over-relying on it. I respectfully point out, Your Honor, that ---- And I only have a couple minutes here left, so I'd like to reserve some time. Contrary to Jones's claim, the commissioner was not required to search the local phone book and other government records. Such an open-ended search imposes burdens upon the state significantly greater than several relatively easy options outlined here. In that case, they had other options. You need to answer Judge Hart's question. May I have a couple extra minutes, Your Honor? We'll see, but answer the question if you would. Okay, yes, Your Honor. And then that same Jones decision, he said that if you see the postman disposing of the mail, you have to take an extra step. You have to provide constitutional notice. And if we were to apply that theory to Jones, there never would have been a Jones theory because, remember, the house is being sold. He's being given a check for his house. Same thing here. You're selling stock. You're giving a check to somebody. The stock rights are gone. The stock is destroyed. The safety deposit contents are destroyed. They're gone forever. I get a check that says, Here's the money for the destruction of your safety deposit box. Here's the money for the sale of your stock. The Berkshire Hathaway stock that was sold for $6,000 is trading today for $233,000 a share. How was I helped by this law? I did nothing wrong. Thank you, Mr. Palmer. Good morning. Excuse me. Robin Johansen on behalf of the Comptroller. I'd like to take 10 minutes to talk about the notice issue, and then Ms. Prinzing would like to take 5 to discuss the conflict of interest and post-sheet remedy issues raised by the plaintiffs. I think it's very clear to the Court and it's very clear to the plaintiffs that this Court has repeatedly upheld the current version of the California unclaimed property law. So if there is going to be any kind of a claim left, these plaintiffs are going to somehow have to establish through their pleading that the State Comptroller's office is not complying with that law. That's the only thing that is available to them. And in order to do that, they are trying to stretch Section 1531.5 beyond its possible interpretation. I think that's the case. Let me ask you about that. Thank you, Your Honor. It says in subsection A, the Comptroller shall establish and conduct a notification program designed to inform the owners, et cetera, et cetera. And then it says in B, any notice sent pursuant to this section shall not contain a photograph or likeness of an elected official. We know the reason for that. But it talks about any notice sent. What is contemplated by that part of the statute, 1531.5? I'm sorry, Your Honor. You asked me. I didn't hear the last part of your question. You're referring to the ---- What is contemplated by shall establish a notification program? As the Court pointed out earlier, it's a post-sheet program. In other words, and by post-sheet we mean not only that the property has been deemed to have a sheet as a matter of law, but it's actually been transferred to the Comptroller's office. So it's to set up a means by which the Comptroller may use State funds, but those are limited State funds, as the statute says, to reach out and try to reunite I understand that's what it says. Yes. In concrete terms, what does it require? What's contemplated by establishing and conducting a notification program? Well, what's required by it is that there be some place in the Comptroller's office where some level of staff, and that level of staff is determined in each State budget every year, may be used to reach out and try to reunite property owners with their property. It does not mean that the Comptroller is required to consult databases. No, I understand that. But it says it's mandatory. It says it shall establish. That's correct. You agree. Yes. So the question in concrete terms, what do you think is the minimum requirement under .5? What is the minimum requirement is the staff that the budget allows. And in this case, that's two people. That is what the budget, the State budget, the legislature has allocated for this. So what we have are two people who are tasked with going through and really trying to find people. I think basically what they try to do is look at large amounts of property, for example, because there's a lot of property that's in the system that's $2, $3, that kind of thing. And they're trying to reunite people with property that matters. And they're doing that to the best of their ability. They have then the permissive use of searching and asking other State agencies to provide information. But it's permissive. It does not require them to do that. They're there, and they're going to try to use whatever they can. You're saying the statute is permissive? Entirely permissive, Your Honor. Okay. But the statute is permissive. What about the Jones case, which says they have to do more than just mail it out and keep your fingers crossed? Well, as the Court already mentioned, the Jones case says that, A, we're dealing with the loss, permanent loss of someone's home. B, even in that case, when the letter, the certified letter was returned unopened, Justice Roberts suggested that you send direct mail uncertified, or you post it on the House door. That might have worked. And then he went on and he said, but you are not required to look in the phone book. You are not required to consult these other databases that plaintiffs insist. What are they required to do when they know they have a stale address? I'm sorry. Under Jones? Are we talking about under the California statute? Well, both. I mean, if the controller knows he has a stale address, what is he supposed to do? What the controller is told by statute, that this Court has approved, is that if he can get a better address from the Franchise Tax Board, then he's to use the other address. Okay. And if he gets an address from the Franchise Tax Board that he knows is no good, what is he supposed to do? Then he holds the property. He puts it up on his website where, you know, it's available forever, as long as we have a website. Why shouldn't he check the DMV records? Because he doesn't have the staff. Well, let's stop right there. We're dealing with a dismissal of a complaint for failure to state a claim. All right. So we don't know what his staff is. We take the complaint as true. The Court has upheld what this statute requires. Right. Now the statute also gives them the tools to go to databases. The statute gives them tools post a sheet to go to a database. Okay. So why shouldn't, since that regime has been upheld, why shouldn't we say, well, go to the databases? This would be post a sheet. We're all agreed on that. Well, there's really limited to post a sheet. It says once the property has been received. No, no. I'm talking about 15, what is it, 1531.5. 1531.5. Section C doesn't say post a sheet or free a sheet. It just says notwithstanding any other law. I'm sorry, but A, Your Honor, does say. That's A. I'm not talking about A. I'm talking about C. No, but A governs C. Because it talks about. Well, you want to quarrel about it, but it says notwithstanding any other law. Yes. The controller can get these other records. Now, my question is why shouldn't he, you know, make some effort to use that tool? Your Honor, this is a custodial sheet statute that is different very much from Jones. But even in Jones, what the Court said was that you're not required to do this. Now, whether the State would find that it might be a better thing to do it or the required. And this Court has said that this statute, these sets of statute, provide Malayne-style notice. I agree with you, but he says, fine, but you don't use it. That's why he's filing an as-applied challenge. But, and, Your Honor, what we're saying is 1531.5 is being used. But 1531.5 does not require the kind of search of databases on the scope that the plaintiffs are arguing about. It could not have anticipated that because of the language limiting the controller to whatever's in the State budget. So that the legislature very clearly meant to limit the scope of these additional searches. That was before the Court, this Court, in Taylor III. This Court upheld this standard and said this is enough. And in the Prius sheet, it was pretty specific. They were talking about what's required before the property is transferred to the government. Well, the Court had before it the entire statute. I understand that, but with regard to the Prius sheet requirements from the statute, they said that passed muster. And that was sending out the letter in accordance with the holder sends it out first, and then the controller has to send out his own letter on the term set forth in here, which is check the address against the tax board, if necessary. Okay. Post this sheet, maybe the answer to the question is what is required under 1531.5. What is required may be answered by 1531, also dealing with the sheeted property, post the sheeted property, which says, A, within one year after payment or delivery of the sheeted property, the controller shall cause a notice to be published in a newspaper of general circulation, et cetera, et cetera, et cetera, and then provide certain details as to the kind of publication. Is that what's required, post this sheet, for constitutional grounds? You do the Prius sheet notification by letter, or actually two letters, plus notification. Correct. And then he posts his sheet notification in accordance with 1531. That's correct. And then you're saying 0.5, that part of the postage sheet is not mandatory, but if you've got two people working on it, so much the better. Yes, Your Honor. Is that your argument? And in addition to that, the record is clear that we do more than that. We maintain the website that is not even required by statute, that is searchable any time, any place, so that a person who is wanting to know whether he or she has unclaimed property can go and check it. You wanted to pass the baton, I think. Yes, I do. Thank you, Your Honor. Thank you. Mm-hmm. Good morning. Good afternoon, Your Honors. My name is Margaret Prinzing, and I'd like to address plaintiff's efforts to bring two new sets of allegations to the complaint that's now before the court in an effort to keep their case alive. And we believe the district court was correct in dismissing those claims. First of all, plaintiffs tried to criticize the controller's claims process by alleging that the state has not complied with the California Administrative Procedures Act. And I'd like to point out that the California APA only applies when the California legislature has not provided alternative methods, which is what the legislature has done here. California Code of Civil Procedures Section 1540 says what the controller needs to do is have a public hearing and then issue forms and guidelines to provide instructions for owners on how to reclaim their property. Plaintiffs do not and cannot allege that the controller has not complied with those provisions. I'd say even more than that, if there were some question as to whether the controller was complying with state law in this regard, this court has already decided in decisions in this case, or has already affirmed the fact that under the 11th Amendment, federal courts don't have jurisdiction to tell the state how to comply with state law, and that would include the Administrative Procedures Act. And this forecloses plaintiffs' due process claim against the claims process. Secondly, plaintiffs have newly raised allegations that there's a conflict of interest with the contractor that the controller uses in order to send out notice. Plaintiffs concede in their briefs that there are no cases out there supporting their claim, which is basically because a conflict of interest without more, in this case, a conflict of interest without allegation that there's an actual problem with the mailing of the notice does not state a due process claim. Sotomayor, this is the conflict that they get to keep some of the portion of the, of whatever they can't find the owner of? Exactly, Your Honor. So the controller has auditors who go back to the holders to make sure the holders are complying with the law by turning over the property that they need to turn over. And then the controller is also hired ACS to manage the mailing out of the mail notices that we're talking about. Plaintiffs claim that because there's a corporate connection between these two claims, there's a conflict of interest. But the situation is such that here, ACS, they only have a ministerial obligation to send out these mail notices. Plaintiffs do not claim, and cannot claim, that they're failing to do that. So regardless of whether there's a conflict of interest, it's not actually affecting anything. And there's no case law saying that that's disqualifying under the due process clause. Do they suggest another way that they ought to be compensated? Pardon me? Is there a suggestion of another way that would be better, that they ought to be compensated? Well, I don't think plaintiffs have suggested that there's any better way for them to be compensated. Nor, I think, in this Court, could plaintiffs really ask this Court to weigh in on that issue. Because California is a sovereign state and a federal court, there are federalism concerns here. And so when it comes to the Comptroller choosing his or her own contractors, I think federalism requires that we give wide latitude to the state to conduct its own internal affairs. Were you involved in the Suver series of cases? Yes, we are. Yes, we were. You personally? Yes, I was. I'm curious, because in that case, apparently some of the same issues seemed to be raised, even though there's not a lot of back discussion there. But in that case, in the Suver III, the second issue said, Appellant's claim regarding the use of auditors fails to raise a tribal issue. Appellants fail to raise any genuine factual dispute as material to whether the Comptroller violated federal law by retaining auditors. That's correct. Is that the same situation we have here, or was there a different set of facts? It was a slightly different claim. As we've been cycling through all of these cases, the allegations come back with slightly different spins. At that point, there was a suggestion that it was illegal to hire the auditors and require them to be paid on a contingency basis, because perhaps that would taint the process in another way. But yes, you're correct. That claim's been rejected in that case and in other district court cases as well. Thank you, Ms. Prentice. Thank you, Your Honors. Hang on a second. Would you put two minutes on the clock, please? We're not ready yet. Hang on. There you go. Okay. Please proceed. To respond briefly, Your Honor, the panel's exactly right. And there is no compliance with the statute, 1531.5, that the controller shall establish and shall use these databases. As they've just told you, they have two people trying to find 17.1 million people. They spend $155 million seizing the property. They spend less than a million dollars notifying the owners. They use a given On the issue of auditors, you haven't talked about that yet. I know there seems to be an absence of an allegation that these auditors, in fact, were not doing the job properly. Yes, that's true. You're saying on information relief they may not be because they have some incentive. But there is no allegation that they, in fact, are violating their obligations to carry out their task. Is that correct? Yes. The auditors are in the business of taking property so that they can be paid. They're not in the business of reuniting people with their property or assuring that people are not lost and unknown. In the published Vongides v. Hewlett-Packard case, we established, which is a published decision in the State court, I established that the auditors went in and took Mr. Vongides' property, which did not fall within the ambit of the statute. They have three contracts per year, each one at $500 million, and they're giving them 11 percent of $500 million to three auditors to seize property. And these auditors do not work according to guidelines. They don't follow any process. They go in and they just look at a list. Did he cash a dividend? But that's not a list. That's the problem. Well, I can amend and allege it easily. But if I could just wrap up, Your Honor. It's the same publication notice that this Court has already ruled was unconstitutional. We're sending stale letters to stale addresses, and we are not applying all of the statute, 1531.5. I didn't get a chance to get the claims issue, but to just conclude. Well, it looks like we're out of time, so thank you. Thank you, Your Honor. Thank you, too, counsel. The case just argued is submitted. To our visitors, let me say that Judge Schroeder and Judge Huck and I are going to go back to the conference room and discuss these cases. We invite you to stick around and meet with the law clerks, and then we'll come out when we're done and have a chance to visit with you ourselves for a few minutes. Okay.  Thank you, Your Honor. Thank you. All rise. This court for this session stands adjourned.
judges: Huck, Schroeder, Silverman